[904 NE2d 823, 876 NYS2d 687]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX SORIANO GUERRERO, Appellant.

Argued January 8, 2009; decided February 19, 2009

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*William A. Loeb* and *Robert S. Dean* of counsel), for appellant. The mandatory surcharge and crime victim assistance fee, which were added to appellant's sentence and commitment sheet by the clerk of the court, constituted components of appellant's sentence, thus requiring that imposition of the fees be pronounced by the court at sentencing. (*People v Lemos,* 34 AD3d 343; *People v Sparber,* 10 NY3d 457; *People v Harris,* 51 AD3d 523, 10 NY3d 935; *People v Nieves,* 2 NY3d 310; *People v Perry,* 36 NY2d 114; *People v Ford,* 86 NY2d 397; *Smith v Doe,* 538 US 84; *Kellogg v Travis,* 100 NY2d 407; *People v Catu,* 4 NY3d 242; *People v Quinones,* 95 NY2d 349.)

*Robert M. Morgenthau, District Attorney,* New York City (*Richard Nahas* and *Vincent Rivellese* of counsel), for respondent. The mandatory surcharge and fees imposed by Penal Law § 60.35 are not part of a defendant's sentence at all, but certainly do not need to be separately pronounced by the court at sentencing. (*People v Sparber,* 10 NY3d 457; *Smith v Doe,* 538 US 84; *People v Catu,* 4 NY3d 242; *Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358; *United States v Spallone,* 399 F3d 415; *Doe v Pataki,* 120 F3d 1263, 522 US 1122; *People v Nieves,* 2 NY3d 310; *Ferrin v New York State Dept. of Correctional Servs.,* 71 NY2d 42; *Matter of Tonis v Board of Regents of Univ. of State of N.Y.,* 295 NY 286; *People v Santi,* 3 NY3d 234.)

## OPINION OF THE COURT

READ, J.

On July 20, 2006, defendant Felix Soriano Guerrero pleaded guilty to second-degree intentional murder (Penal Law § 125.25 [1]) in exchange for an indeterminate sentence of 19 years to life imprisonment. At the subsequent sentencing hearing on September 11, 2006, Supreme Court stated that defendant had acknowledged "that he accepts the plea and the Court certainly intends to go ahead and impose the sentence promised at the time we reached that agreement[;] that is[,] an indeterminate term of imprisonment of 19 years to life." The judge did not mention that defendant was required to pay a mandatory sur-

charge of $150 and a crime victim assistance fee of $2 as a result of his conviction. These assessments were, however, listed on the "Uniform Sentence and Commitment" sheet, which the clerk signed, and the court worksheet, which the judge signed and stamped.

Defendant appealed, arguing that the mandatory surcharge and crime victim assistance fee should have been pronounced by the judge in open court at sentencing. After the Appellate Division unanimously affirmed his conviction and sentence (45 AD3d 313 [2007]), a Judge of this Court granted defendant leave to appeal (10 NY3d 863 [2008]) so that we might review his claim in light of our recent decision in *People v Sparber* (10 NY3d 457 [2008]). We now hold that the mandatory surcharge and crime victim assistance fee mandated by Penal Law § 60.35 (1) are not a part of a sentence within the meaning of sections 380.20 and 380.40 of the CPL; therefore, a judge need not pronounce them in a defendant's presence during sentencing.

CPL 380.20 calls upon courts to "pronounce sentence in every case where a conviction is entered"; CPL 380.40 (1) directs that "[t]he defendant must be personally present at the time sentence is pronounced." CPL 1.20 (13), in turn, defines "conviction" as a plea or verdict of guilty, while CPL 1.20 (14) defines "sentence" as "the imposition and entry of sentence upon a conviction." Thus, although the CPL commands that a defendant's "sentence" must be "pronounced" by the court in the defendant's presence, it gives no guidance as to which consequences of a conviction are covered by this requirement. This is where our decisions in *Sparber* and *People v Nieves* (2 NY3d 310 [2004]) come into play.

In *Sparber*, we concluded that because postrelease supervision (PRS) is a component element of a sentence, CPL 380.20 and 380.40 require a judge to pronounce the terms of PRS at sentencing (10 NY3d at 468-469). In *Nieves* we found a defendant's unpreserved claim of error to be unreviewable under the exception to the preservation requirement for an illegal sentence. This was so because "although the orders of protection [in question] were issued at [Nieves'] sentencing proceeding, it [wa]s evident from the statutory scheme that the orders were not a part of defendant's sentence" (2 NY3d at 316). In both cases, we carefully examined the language of the statute imposing or authorizing the particular consequence of conviction at issue in order to decide whether it inhered in the sentence.

For example, at the time of our decision in *Sparber*, Penal Law § 70.45, entitled "Determinate sentence; post-release supervision," deemed PRS to be "a part" of a determinate sentence (*see* 10 NY3d at 468-469); the provision began as follows: "1. In general. Each determinate sentence also includes, *as a part thereof*, an additional period of post-release supervision" (emphasis added). Concomitantly, Penal Law § 70.00 (6) specifies that the determinate sentences for which it provides "shall include, *as a part thereof*, a period of post-release supervision in accordance with section 70.45" (emphasis added). By contrast, the statute construed in *Nieves*—CPL 530.13 (4)— "[did] not characterize permanent orders of protection as a component of sentencing," and "[n]o reference [was] made in any . . . provisions [governing sentences for criminal offenses] to an order of protection as a permissible sentence" (*Nieves*, 2 NY3d at 316).

The statute imposing the mandatory surcharge and crime victim assistance fee, while noting that these assessments are to be "levied at sentencing," describes them as distinct from "any sentence required or permitted by law" (Penal Law § 60.35 [1] [a]). Specifically, Penal Law § 60.35 (1) (a) states that "there shall be levied at sentencing a mandatory surcharge, sex offender registration fee, DNA databank fee and a crime victim assistance fee *in addition to any sentence required or permitted by law*" (emphasis added), rather than as "a part" of the sentence itself, as was the case with the statute we interpreted in *Sparber*. Unlike the statute we considered in *Nieves*, section 60.35 (1)'s text clearly indicates that the surcharge and fee are *not* incorporated into the sentence; it is not merely silent as to this issue. As a result, the fact that this provision is within the Penal Law's sentencing scheme does not lead to the conclusion that these assessments are component elements of the sentence.

Defendant argues, however, that the language of section 60.35 (1) does not mandate the outcome in this case because Penal Law § 60.35 (2) refers to a "*sentence to pay* a mandatory surcharge, crime victim assistance fee or supplemental sex offender victim fee" (emphasis added). But it is subdivision (1) of section 60.35—not subdivision (2)—which actually creates the obligation to pay the mandatory surcharge and crime victim assistance fee; subdivision (2) merely tells the court how to calculate the surcharge and the various fees in cases where a person has been convicted of two or more crimes or violations or offenses. Further, section 60.35 (1)'s legislative history strongly supports

the proposition that the Legislature did not intend the surcharge or fee to be "an additional punishment component" of a sentence (*see Sparber*, 10 NY3d at 469).

Section 60.35 was originally enacted as part of a massive revenue-raising bill meant to "avert the loss of an estimated $100 million in State tax revenues" (Legislative Mem in Support, Bill Jacket, L 1982, ch 55, at 6; *see also People v Quinones*, 95 NY2d 349, 352 [2000] ["The mandatory surcharge/crime victim assistance fee is paid to the State to shift costs of providing services to victims of crime from law abiding taxpayers and toward those who commit crimes" (internal quotations marks omitted)]; *People v Barnes*, 62 NY2d 702, 703 [1984] [mandatory surcharge levied and collected following every criminal conviction "appear(s) to be related . . . to the State's legitimate interest in raising revenues"]).

Finally, the statute's nomenclature reinforces its nonpunitive nature: the assessments imposed by section 60.35 (1) are called a "surcharge" or a "fee," not a "penalty." Indeed, when first enacted in 1982, Penal Law § 60.35 was entitled "Mandatory *penalty* assessment required in certain cases" (emphasis added). The very next year, the Legislature changed every statutory reference to "penalty assessment" in Penal Law § 60.35 and CPL 420.35 to "mandatory *surcharge*" (*see* L 1983, ch 15, §§ 2, 3 [emphasis added]). A "surcharge" is generally defined as "an additional tax, cost, or impost" (*see* Merriam-Webster's Collegiate Dictionary 1185 [10th ed 1996]).

The Senate-Assembly Memorandum in Support of the 1983 legislation—the "subject and purpose" of which was to "provide[ ] the revenues necessary to finance the 1983-84 State Budget" (*see* Bill Jacket, L 1983, ch 15, at 9)—states as follows:

> "SUMMARY OF PROVISIONS . . .
>
> "Sections two and three amend the Penal Law and the Criminal Procedure[ ] Law to make technical changes to collection procedures first enacted in 1982-83. These technical changes correct the problems that were raised by attorneys and judges alike, and will allow the surcharge program to be implemented with a minimum of confusion" (*id.*).

Most of the technical changes made by sections 2 and 3 consisted of substituting "mandatory surcharge" for "penalty assessment" (specifically, 13 separate substitutions in Penal Law § 60.35 and two separate substitutions in CPL 420.35,

including in the title of both provisions). While there is no discussion or explanation in the legislative history of the legal "problems" or "confusion" the Legislature meant to dispel by making these linguistic changes, the revised nomenclature eliminated the implication connoted by use of the word "penalty" that this assessment was meant to be punitive as well as to raise revenue.

Accordingly, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed.